UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| JANE NEELEY and | ) | |
| RAY NEELEY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:15-CV-180-TAV-HBG |
| | ) | |
| GRAINGER COUNTY GOVERNMENT, | ) | |
| BEAN STATION MUNICIPALITY, and | ) | |
| NATHAN COOK, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This civil action is before the Court on the following motions: (1) defendant Bean

Station Municipality's ("Bean Station") Motion to Dismiss Claims Brought by Jane Neeley

[Doc. 16]; (2) plaintiff Ray Neeley's Motion to Substitute Party [Doc. 20]; (3) defendant

Bean Station's Motion to Strike Plaintiffs' Motion to Substitute Party [Doc. 22]; (4)

defendants Grainger County Government ("Grainger County") and Nathan Cook's Motion to

Dismiss the Claims of Jane Neeley [Doc. 24]; (5) plaintiff Ray Neeley's Motion for

Extension of Time Under Federal Rules of Civil Procedure 6(b) [Doc. 27]; (6) defendant

Nathan Cook's Motion for Summary Judgment [Doc. 35]; (7) defendant Grainger County's

Motion for Summary Judgment [Doc. 38]; (8) plaintiff Ray Neeley's Motion to Amend

Pleading [Doc. 43]; (9) defendant Bean Station's Motion for Summary Judgment [Doc. 44];

and (10) plaintiff Ray Neeley's Motion for Extension of Time Within Which to File a

Certificate of Good Faith or Excuse Compliance for Extraordinary Cause [Doc. 56]. The

parties filed responses and replies to the pending motions [Docs. 18, 21, 23, 26, 28–32, 50–51, 55, 57–59, 61–62].

For the reasons that follow, the Court will: (1) grant defendant Bean Station's Motion to Dismiss Claims Brought by Jane Neeley [Doc. 16]; (2) deny plaintiff Ray Neeley's Motion to Substitute Party [Doc. 20]; (3) deny as moot defendant Bean Station's Motion to Strike Plaintiffs' Motion to Substitute Party [Doc. 22]; (4) grant defendants Grainger County and Nathan Cook's Motion to Dismiss the Claims of Jane Neeley [Doc. 24]; (5) deny plaintiff Ray Neeley's Motion for Extension of Time Under Federal Rules of Civil Procedure 6(b) [Doc. 27]; (6) grant in part and deny in part as moot defendant Nathan Cook's Motion for Summary Judgment [Doc. 35]; (7) grant in part and deny in part as moot defendant Grainger County's Motion for Summary Judgment [Doc. 38]; (8) deny plaintiff Ray Neeley's Motion to Amend Pleading [Doc. 43]; (9) deny as moot defendant Bean Station's Motion for Summary Judgment [Doc. 44]; and (10) deny as moot plaintiff Ray Neeley's Motion for Extension of Time Within Which to File a Certificate of Good Faith or Excuse Compliance for Extraordinary Cause [Doc. 56].

I.    **Background**[1]

Plaintiff Jane Neeley and her husband, plaintiff Ray Neeley, lived at 2624 Meadowbranch Road [Doc. 35-2 p. 3].  On October 18, 2014, at 9:22 a.m., Mr. Neeley called

---

[1]    The Court only includes facts as necessary for the Court to conduct its analysis.  As discussed herein, without necessitating any discussion of the facts relating to such claims, the Court will dismiss all of plaintiff Jane Neeley's claims and will decline to exercise jurisdiction over plaintiff Ray Neeley's state-law claims.  Consequently, this background section only includes facts necessary to analyze whether summary judgment is warranted as to Mr. Neeley's 42 U.S.C. § 1983 claim against defendant Cook and Mr. Neeley's federal disability discrimination claims against defendant Grainger County.

911 and told the dispatcher: "My wife has fallen on the floor. She is mentally confused" [Doc. 35-1, 911 Recording; Doc. 35-2 p. 37].[2] He provided that Mrs. Neeley is seventy-one years old [Doc. 35-1, 911 Recording; Doc. 35-2 p. 38]. He further stated: "She's got a problem. She's been in a hospital for nine days in Knoxville. With a colon blockage. They unblocked the wrong end of her, see. They should have unblocked her mind instead of her butt" [Doc. 35-1, 911 Recording; Doc. 35-2 p. 38]. Mr. Neeley also told the dispatcher: "What it is, we've gotten into it, and I'm tired of it" [Doc. 35-1, 911 Recording; Doc. 35-2 p. 38].

The 911 dispatcher sent Grainger County Emergency Medical Services ("EMS") and defendant Deputy Nathan Cook to 2624 Meadowbranch Road [Doc. 35-3 p. 2; Doc. 35-4 p. 2; *see also* Doc. 35-1, 911 Recording]. The dispatcher advised Cook that there had been a domestic incident [Doc. 35-3 p. 2; *see also* Doc. 35-1, 911 Recording].

The 911 dispatcher asked Mr. Neeley how long Mrs. Neeley had been on the floor, and he responded: "Damn near an hour. She's asked me to come in there and pick her up, but after what she's done, I ain't picking her up" [Doc. 35-1, 911 Recording; Doc. 35-2 p. 39]. Mr. Neeley then told the dispatcher how Mrs. Neeley had fallen and that he grabbed her in an "excited" fashion [Doc. 35-1, 911 Recording; Doc. 35-2 pp. 39–41]. He further stated: "And she swore up and down that I had got out of bed mad and pissed off and that's why I grabbed her what I did" [Doc. 35-1, 911 Recording; Doc. 35-2 p. 40]. Mr. Neeley then told

---

[2] The Court has listened to the 911 recording, which was made part of the record [Docs. 35-1, 37]. In addition, the recording was played during Ray Neeley's deposition, and the court reporter transcribed the recording [Doc. 35-2 pp. 37–44].

3

the dispatcher: "I can't deal with her no more.  I just can't deal with her no more.  I'm going to get her some help or I'm going to get her out of this house" [Doc. 35-1, 911 Recording; Doc. 35-2 p. 41].  Mr. Neeley reiterated that Mrs. Neeley had been on the floor for an "[h]our and ten minutes," and he further told the dispatcher that Mrs. Neeley cannot walk and that he "refus[es] to pick her up now because [he's] not arguing with her no more" [Doc. 35-1, 911 Recording; Doc. 35-2 pp. 41–42].

Because Officer Cook was far away from the Neeley residence, and it involved a possible domestic situation, he requested that Bean Station Officer Matthew Corey Stapleton respond to 2624 Meadowbranch Road [Doc. 35-5 p. 2].  Stapleton was the first officer to arrive on scene, and his initial interactions with Mr. and Mrs. Neeley were captured on video through Stapleton's body camera [Doc. 35-6, Stapleton Video].[3]

Upon Stapleton's arrival, Mr. Neeley tells Stapleton: "My wife, she's been in the hospital for nine days in Knoxville.  And she had a colon block" [*Id.*].  He further states: "For seven years, I've been fighting with this crazy ass woman in here" [*Id.*].  Mr. Neeley also told Stapleton: "She's fell in the kitchen.  She, well, she started to fall this morning, but I grabbed hold of her and jerked her up and because I got all excited, I had water and crackers in my hand, she said that I was mean and I got pissed off at her and I tried to hurt her.  I've, I've had enough and I can't deal with it no more" [*Id.*].

As Mr. Neeley and Stapleton were entering the house, Mr. Neeley told Mrs. Neeley: "Tell him the lie Jane.  Tell him your lie now that you want to tell him" [*Id.*].  Mrs. Neeley then began to speak when Mr. Neeley interrupted her and said: "Tell him whatever the hell

---

[3]  The Court reviewed this video, which was made part of the record [Docs. 35-6, 37].

you want to tell him" [*Id.*]. Mrs. Neeley tells Stapleton that she needs some help up to a chair "cause he left me like this" [*Id.*]. Mr. Neeley then stated: "You're out of here" [*Id.*]. Mrs. Neeley responded: "He just wants me out of the house" [*Id.*].

The medics arrived shortly thereafter [*Id.*]. As they entered, one medic, Justin Stalsworth, asks Mr. Neeley: "She been laying in the floor for an hour?" [*Id.*]. Mr. Neeley responded: "Yep" [*Id.*]. Stalsworth asked: "How come?" and Mr. Neeley responded: "I refused to pick her up" [*Id.*]. Stalsworth then ordered Mr. Neeley out of the house and proceeded to speak with Mrs. Neeley [*Id.*].

Stalsworth mentions to Mrs. Neeley that the dispatcher said Mr. Neeley left her on the floor for an hour, to which Mrs. Neeley nods in response [*Id.*]. The medics asked Mrs. Neeley if Mr. Neeley ever hit her [*Id.*]. She advised them that he had hit her in the past but not that morning and not recently [*Id.*]. Mrs. Neeley then described how she fell that morning [*Id.*]. She mentioned that Mr. Neeley was holding her arm and looking at her "real hard" after she fell [*Id.*]. She also provided that she did not feel threatened at her house [*Id.*].

The body-camera video ends before the medics complete their assessment of Mrs. Neeley and prior to Officer Cook's arrival [Doc. 35-3 p. 4]. Before he arrived, Cook had been advised by the dispatcher that Mrs. Neeley had been on the floor for approximately an hour, that Mr. Neeley had refused to help her up, and that the couple had been arguing [*Id.* at 2]. When Cook arrived at the house, he spoke with Mrs. Neeley and saw that she had some bruising on her arm and a small cut [*Id.* at 2–3].

5

Mrs. Neeley informed Cook that Mr. Neeley had previously stated that if anybody caused him to go to jail, he would kill them [*Id.* at 8–9]. Cook perceived Mrs. Neeley as being fearful of Mr. Neeley [*Id.* at 6–7]. Cook also learned from Mr. Neeley and the dispatcher that Mr. Neeley called 911 only after three individuals told him to [*Id.*].

Based on these circumstances, Cook believed that Mr. Neeley had placed Mrs. Neeley in fear of imminent bodily injury [*Id.* at 5–9]. Cook then arrested Mr. Neeley for domestic assault [*Id.* at 5].

Mr. Neeley was taken to Grainger County Jail [*Id.* at 10]. After he was booked in at the jail, Mr. Neeley asked for a pillow and a mat, but he was not provided either [Doc. 35-2 pp. 27–28]. Mr. Neeley did not provide the jailer with any reason why he needed those items [*Id.* at 31–32]. The domestic assault charge against Mr. Neeley was dismissed at the preliminary hearing [*Id.* at 36; Doc. 55-16 pp. 2–3].

Plaintiffs Jane and Ray Neeley filed suit against defendants on April 27, 2015 [Doc. 1], and amended their complaint as a matter of course on May 12, 2015 [Doc. 4]. Both plaintiffs assert the following claims in their amended complaint: (1) negligence claims against Grainger County and Bean Station pursuant to Tennessee state law; and (2) negligent infliction of emotional distress claims against all defendants pursuant to Tennessee state law [*Id.* at 8–9, 10]. Plaintiff Ray Neeley asserts the following additional claims: (1) disability discrimination claims against Grainger County pursuant to the Americans with Disabilities Act ("ADA"), the Rehabilitation Act of 1973, and the Tennessee Human Rights Act; (2) claims against Officer Cook pursuant to 42 U.S.C. § 1983 for violations of the Fourth and

6

Fourteenth Amendments; and (3) false arrest, malicious prosecution, intentional infliction of emotional distress, and false imprisonment claims against Officer Cook pursuant to Tennessee state law [*Id.* at 9–12].

There are a number of pending motions before the Court in this matter. The following motions concern whether plaintiff Jane Neeley's claims should be dismissed pursuant to Federal Rule of Civil Procedure 25(a)(1): (1) Bean Station's Motion to Dismiss Claims Brought by Jane Neeley [Doc. 16]; (2) Ray Neeley's Motion to Substitute Party [Doc. 20]; (3) Bean Station's Motion to Strike Plaintiffs' Motion to Substitute Party [Doc. 22]; (4) Grainger County and Nathan Cook's Motion to Dismiss the Claims of Jane Neeley [Doc. 24]; and (5) Ray Neeley's Motion for Extension of Time Under Federal Rules of Civil Procedure 6(b) [Doc. 27]. Also pending before the Court is Ray Neeley's Motion to Amend Pleading [Doc. 43]. In addition, all defendants filed motions for summary judgment [Docs. 35, 38, 44], and Ray Neeley filed a Motion for Extension of Time Within Which to File a Certificate of Good Faith or Excuse Compliance for Extraordinary Cause [Doc. 56], which relates to the motions for summary judgment. The Court will first address the five pending motions [Docs. 16, 20, 22, 24, 27] pertaining to whether Mrs. Neeley's claims should be dismissed pursuant to Federal Rule of Civil Procedure 25(a)(1). The Court will then turn to the motion to amend [Doc. 43]. Lastly, the Court will consider the motions for summary judgment [Docs. 35, 38, 44] and Ray Neeley's related motion [Doc. 56].

## II. Jane Neeley's Claims[4]

Plaintiff Ray Neeley filed a Suggestion of Death Notice on January 7, 2016, providing that his wife, plaintiff Jane Neeley, died on December 14, 2015 [Doc. 15]. Pursuant to Federal Rule of Civil Procedure 25(a)(1), if a motion to substitute is not made within ninety days after service of a statement noting death, the decedent's claims "must be dismissed." Fed. R. Civ. P. 25(a)(1). Here, the deadline under Rule 25(a)(1) for filing a motion to substitute was April 6, 2016—ninety days after the suggestion of death notice was filed.

On April 13, 2016, defendant Bean Station filed a Motion to Dismiss Claims Brought by Jane Neeley, stating as grounds the absence of a motion for substitution [Doc. 16]. Thereafter, on April 19, 2016, Ray Neeley filed a Motion to Substitute Party [Doc. 20]. On April 28, 2016, Bean Station filed a Motion to Strike Plaintiffs' Motion to Substitute Party [Doc. 22], and defendants Grainger County and Nathan Cook filed a Motion to Dismiss the Claims of Jane Neeley [Doc. 24]. On May 16, 2016, Ray Neeley filed a Motion for Extension of Time Under Federal Rules of Civil Procedure 6(b) [Doc. 27], in which he moves the Court for an enlargement of time to file the motion to substitute.

---

[4] The Court notes that there is a motion to amend the complaint pending [Doc. 43], and that granting a motion to dismiss before addressing a pending motion to amend can be an abuse of discretion. *See Thompson v. Superior Fireplace Co.*, 931 F.2d 372, 373 (6th Cir. 1991). Although the Court will address defendants' motions to dismiss [Docs. 16, 24] prior to addressing the motion to amend, the Court finds that the proposed amended complaint [Doc. 43-4] would not cure the deficiencies raised in defendants' motions to dismiss [Docs. 16, 24]. As such, any proposed amendments pertaining to Mrs. Neeley's claims would be futile and, consequently, granting leave to amend as to such claims would not be appropriate. *See Leary v. Daeschner*, 349 F.3d 888, 905 (6th Cir. 2003).

8

The Court will first address Mr. Neeley's motion for an extension [Doc. 27]. Then the Court will turn to Mr. Neeley's motion to substitute [Doc. 20] and Bean Station's motion to strike [Doc. 22]. Lastly, the Court will consider defendants' motions to dismiss [Docs. 16, 24].

## A.  Motion for Extension of Time

Ray Neeley moves for an extension of time, pursuant to Federal Rule of Civil Procedure 6(b), to file a motion to substitute, in order to allow him to pursue claims on behalf of his deceased wife, plaintiff Jane Neeley [Doc. 27]. As Mr. Neeley requested this extension after the deadline for filing the motion to substitute had already expired, Rule 6(b) provides that the Court may grant the request only if Mr. Neeley "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Such neglect exists "where the failure to do something occurred because of a simple, faultless omission to act, or because of a party's carelessness." *Turner v. City of Taylor*, 412 F.3d 629, 650 (6th Cir. 2005). The Supreme Court has noted that, while mere inadvertence does not usually constitute excusable neglect for the purposes of Rule 6(b), the term is a "somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993). Thus, whether neglect is excusable is an equitable determination based on consideration of all relevant circumstances. *Turner*, 412 F.3d at 650.

When considering whether a plaintiff has met the standard for excusable neglect, courts should balance the following factors: (1) the danger of prejudice to the defendants; (2) the length of the delay and its potential impact on the judicial proceedings; (3) the reason for

9

the delay; (4) whether the delay was within the plaintiff's reasonable control; and (5) whether the plaintiff acted in good faith. *Howard v. Nationwide Prop. & Cas. Ins. Co.*, 306 F. App'x 265, 266–67 (6th Cir. 2009) (citing *Pioneer Inv. Serv. Co.*, 507 U.S. at 395). The Sixth Circuit has cautioned that excusable neglect is a "strict standard which is met only in extraordinary cases." *Nicholson v. City of Warren*, 467 F.3d 525, 527 (6th Cir. 2006) (citation omitted). The burden is on the movant to demonstrate excusable neglect. *D.B. v. Lafon*, No. 3:06-CV-75, 2007 WL 896135, at *2 (E.D. Tenn. Mar. 22, 2007).

As to the first factor the Court should consider, the danger of prejudice to defendants, Mr. Neeley points out that he included in the suggestion of death notice that he intended on moving to be substituted as a party for Jane Neeley [Doc. 27-1; *see also* Doc. 15 p. 1]. He contends, therefore, that defendants were given actual notice on January 7, 2016, of who would be the substituting party. Accordingly, Mr. Neeley argues that defendants would not be prejudiced should the Court grant him the extension. Although defendants may have had some notice that Mr. Neeley would be the substituting party, the Court notes that all defendants have filed motions to dismiss based on the absence of a motion to substitute within the ninety-day timeframe [Docs. 16, 24]. Granting Mr. Neeley's motion for an extension would likely result in denying defendants' motions to dismiss. Consequently, the Court finds that defendants would be prejudiced should the Court grant the extension.

As to the second factor, the length of the delay and its potential impact on the judicial proceedings, Mr. Neeley's deadline for filing a motion to substitute was April 6, 2016 [*See* Doc. 15]. *See* Fed. R. Civ. P. 25(a)(1). Mr. Neeley filed his motion to substitute on April 19, 2016 [Doc. 20], and his motion for an extension on May 16, 2016 [Doc. 27]. Although Mr.

Neeley did not miss the deadline by a lengthy period, the Court notes that he filed his motion to substitute just five days after Bean Station filed its motion to dismiss, which states as its ground for dismissal the failure to file a motion for substitution. In addition, Mr. Neeley moved for an extension only after Bean Station moved to strike the motion to substitute based in part on Mr. Neeley's failure to move for an extension. Upon consideration of these circumstances, it appears that Mr. Neeley likely would not have filed the motion to substitute had Bean Station not filed its motion to dismiss, and that he likely would not have filed the motion for an extension had Bean Station not filed its motion to strike. *See Wentz v. Best W. Int'l, Inc.*, No. 3:05-CV-368, 2007 WL 869620, at *3 (E.D. Tenn. Mar. 20, 2007) (stating that where the plaintiff filed a motion for substitution four days after the defendants filed their motion to dismiss, the Court was "left with the indelible impression" that the plaintiff would not have filed the motion to substitute had the defendants not filed the motion to dismiss). As such, while the delay was not long, it is likely that the delay would have been much longer had Bean Station not filed its motion to dismiss.

The Court now turns to the third factor, that is Mr. Neeley's reason for the delay. Mr. Neeley provides that he could not file the motion to substitute until April 18, 2016—the date the Grainger County Probate Court appointed him as Jane Neeley's representative [Doc. 27-1 p. 2]. In response to this argument, Bean Station points out that Mr. Neeley did not file his Petition to Open Intestate for Jane Neeley until April 18, 2016, the same day Mr. Neeley was appointed Mrs. Neeley's representative [Doc. 30 p. 3; *see* Docs. 19, 30-1]. Consequently, Bean Station argues that Mr. Neeley should have filed his petition earlier than he did [Doc. 30 p. 3]. Mr. Neeley provides, however, that the Chancellor in Grainger County only

11

handles probate matters once a month [Doc. 31 p. 1]. While Mr. Neeley submits that he could only file his petition on one specific day in each month, he does not provide any explanation for why he failed to file his petition in January, February, or March. In addition, he does not provide any explanation for why he failed to move for an extension within the ninety-day timeframe. Mr. Neeley could have filed a motion for an extension during the ninety-day timeframe and cited the fact that he had not yet been appointed as Jane Neeley's representative as justification for extending the deadline for him to file a motion to substitute. Mr. Neeley, however, failed to move for an extension until over a month after his deadline for filing the motion to substitute.

Mr. Neeley also provides that he did not move to extend earlier because the requirements of a motion for substitution were satisfied in his suggestion of death notice [Doc. 27-1 p. 2]. Rule 25(a)(1) provides, however, that a *motion* must be made within ninety days after service of a statement noting the death. Fed. R. Civ. P. 25(a)(1). Mr. Neeley specifically styled the notice of suggestion of death as a *notice*, not a *motion*, and even provided in the notice that he "will move to be substituted as a party for Jane Neeley" [Doc. 15 p. 1]. As evidenced by this language, Mr. Neeley contemplated that he would have to file a motion for substitution in addition to the notice. Consequently, Mr. Neeley's notice does not satisfy Rule 25(a)(1) because it is not a motion. Furthermore, the Court notes that Mr. Neeley does not argue that the notice satisfies Rule 25(a)(1) in his motion to substitute [Doc. 20], which was filed before his motion to extend.

The fourth factor the Court must consider is whether plaintiff's delay in filing the motion to extend and motion to substitute was within plaintiff's reasonable control. As the Court has already noted, even though Mr. Neeley argues he could not move to substitute until April 18, 2016, he provides no reason for why he failed to file his petition in January, February, or March, or why he could not move to extend earlier, citing the fact that he had not yet been appointed as a representative as a reason justifying the extension. As such, the Court finds that Mr. Neeley's delay on this basis was within his reasonable control.

Looking at Mr. Neeley's argument that he did not file a motion to extend because his notice was sufficient for purposes of Rule 25(a)(1), "multiple courts," including this Court, "have expressly held that such misapplication or misunderstanding of Rule 25 does not constitute excusable neglect for the purposes of Rule 6(b)." *E.g., Wentz*, 2007 WL 869620, at *3 (citing *Kaubisch v. Weber*, 408 F.3d 540, 543 (8th Cir. 2005); *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507, 515 (2d Cir. 1985)). Rather, the Court finds that Mr. Neeley's misapplication or misunderstanding of Rule 25 was within his reasonable control.

Finally, the Court must consider whether plaintiff acted in bad faith. Although the Court does not find any evidence of bad faith, the Court finds that, upon consideration of the other factors discussed herein, Mr. Neeley has not met his burden of showing that he failed to act because of excusable neglect. *See D.B.*, 2007 WL 896135, at *2. He has not provided any evidence that he failed to act "because of a simple, faultless omission to act, or because of [his] carelessness." *Turner*, 412 F.3d at 650. Mr. Neeley also does not provide any justification for why he waited until April to file his petition to be appointed as Jane Neeley's representative. Furthermore, Mr. Neeley did not move for an extension during the ninety-

13

day timeframe for filing a motion to substitute, and he does not provide any reason for his failure to do so. Indeed, Mr. Neeley did not file his motion for an extension until May 16, 2016—over a month after his deadline had expired. Instead of initially filing a motion for an extension, Mr. Neeley first filed an untimely motion to substitute and provided no reason for his delay and no request for an extension within that motion [Doc. 20].

In addition, the Court notes that it previously denied a motion for enlargement of time under similar circumstances. *See Wentz*, 2007 WL 869620, at *1–3. In *Wentz*, the plaintiff moved for an extension of time to file a motion to substitute after missing the ninety-day deadline by eight days. *Id.* at *3. Similar to the instant matter, the plaintiff in *Wentz* did not file a motion to substitute within the deadline because she had misinterpreted Rule 25. *Id.* at *2. In addition, also analogous to Mr. Neeley, the plaintiff filed her motion for enlargement of time just four days after the defendants filed their motion to dismiss based on the plaintiff's failure to file a motion for substitution. *Id.* This Court found that such circumstances did not constitute excusable neglect and, consequently, denied the motion to extend. *Id.* at *1–3. As the circumstances in the instant case are analogous to those in *Wentz*, the Court again finds that the motion to extend should be denied.

Upon review of the relevant circumstances, the Court does not find that this is an "extraordinary case[]" that meets the "strict standard" of excusable neglect. *Nicholson*, 467 F.3d at 527. As such, the Court will deny Ray Neeley's motion for an extension [Doc. 27].

## B. Motion to Substitute

Because the Court will deny the motion for an extension of time, the Court will also deny Mr. Neeley's Motion to Substitute Party [Doc. 20] as untimely. The motion to

substitute was not filed within ninety days of the suggestion of death notice, and therefore, the motion is untimely under Rule 25(a)(1). Fed. R. Civ. P. 25(a)(1). As the Court will deny the motion to substitute, the Court will deny Bean Station's Motion to Strike Plaintiffs' Motion to Substitute Party [Doc. 22] as moot.

### C. Motions to Dismiss

Bean Station, Grainger County, and Nathan Cook move to dismiss all of Jane Neeley's claims [Docs. 16, 24]. Rule 25(a)(1) mandates that an action by a decedent "must be dismissed" if a motion to substitute is not filed within ninety days after service of a statement noting the death. Fed. R. Civ. P. 25(a)(1); *see also Baker v. Shelby Cty. Gov't*, No. 05-2798, 2007 WL 2042453, at *2 (E.D. Tenn. July 12, 2007) (asserting that dismissal is mandatory where no motion for substitution is filed within ninety days of filing suggestion of death and no request for an enlargement of time is made during the ninety-day period); *Deal v. Polk Cty.*, No. 1:03-CV-385, 2007 WL 1387918, at *11 (E.D. Tenn. May 8, 2007) (stating that dismissal is appropriate where no motion for substitution was filed within ninety days of filing suggestion of death). As there was no motion for substitution filed within ninety days after a statement noting the death of Mrs. Neely, Jane Neeley's claims must be dismissed, and therefore, the Court will grant defendants' motions to dismiss [Docs. 16, 24].

## III. Motion to Amend

Mr. Neeley filed a Motion to Amend Pleading [Doc. 43] and a proposed Second Amended Pleading [Doc. 43-3]. Although the motion to amend was filed after Grainger County and Officer Cook filed their motions for summary judgment [Docs. 35, 38], motions to amend shall be freely granted. Fed. R. Civ. P. 15. In addition, granting a motion for

15

summary judgment before addressing a pending motion to amend can be an abuse of discretion. *See Thompson*, 931 F.2d at 373. As such, the Court will first address the motion to amend and will then turn to the pending motions for summary judgment.

Mr. Neeley moves to amend his complaint to assert claims against Officer Matthew Corey Stapleton and to add additional claims against Bean Station, Grainger County, and Nathan Cook. Defendants responded in opposition to the motion to amend [Docs. 50, 51]. Mr. Neeley has not filed a reply, and his time for doing so has passed. *See* E.D. Tenn. L.R. 7.1(a), 7.2.[5]

Aside from the situations described in Federal Rule of Civil Procedure 15(a)(1), which do not apply here, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave," however, "when justice so requires." *Id.* Leave is appropriate "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Leary*, 349 F.3d at 905 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 633 (6th Cir. 2009). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 807 (6th Cir. 2005) (citing *Neighborhood Dev. Corp. v. Advisory Council on Historic Pres.*, 632 F.2d 21, 23 (6th Cir. 1980)).

---

[5] As Ray Neeley did not file a reply brief, he did not respond to any of defendants' arguments in opposition to the motion to amend.

Defendants assert that the motion to amend should be denied because: (1) the proposed amendments are futile; (2) Ray Neeley exhibited undue delay in moving to amend; and (3) defendants would be unduly prejudiced should the amendments be allowed. The Court will first address whether the proposed amendments are futile [insert citation].

In considering the futility of an amendment, the Court notes that Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). Rule 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether an amendment would survive a motion to dismiss, courts must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a

17

plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

Mr. Neeley asserts the following additional claims in his proposed amended complaint: (1) claims against Matthew Corey Stapleton pursuant to 42 U.S.C. § 1983, and for negligent infliction of emotional distress, false arrest, and false imprisonment under Tennessee state law; (2) claims against Grainger County for false arrest, malicious prosecution, and false imprisonment under Tennessee state law; (3) claims against Bean Station and Grainger County pursuant to 42 U.S.C. § 1983; and (4) a civil-conspiracy claim against Nathan Cook pursuant to 42 U.S.C. § 1983 [Doc. 43-4]. The Court will address the futility of these claims in turn.

### A. Proposed Claims Against Matthew Corey Stapleton

Mr. Neeley seeks leave to amend the complaint to add Matthew Corey Stapleton as a defendant and assert claims against him pursuant to 42 U.S.C. § 1983, and for negligent infliction of emotional distress, false arrest, and false imprisonment under Tennessee state law [Doc. 43-4 pp. 11–15].

"Where an amendment to a complaint would add a new party, the amendment must come within the statute of limitations period or relate back to the original filing date of the complaint." *Lovelace v. City of Memphis Police Dep't*, No. 08-2776, 2010 WL 711190, at *3 (W.D. Tenn. Feb. 24, 2010). In all actions brought under § 1983 alleging a violation of civil rights or personal injuries, the state statute of limitations governing actions for personal injuries is to be applied. *Berndt v. Tennessee*, 796 F.2d 879, 883 (6th Cir. 1986) (citing *Wilson v. Garcia*, 471 U.S. 261, 275 (1985)). As Tennessee's limitations period for actions

18

brought under federal civil rights statutes or for personal injuries is one year, Mr. Neeley's §

1983 claims are subject to a one-year statute of limitations. Tenn. Code Ann. § 28–3–

104(a)(1). Additionally, Mr. Neeley's proposed false arrest, malicious prosecution, and false

imprisonment claims under state law are also subject to a one-year statute of limitations. *Id*;

*see also Trobaugh v. W.B. Melton*, No. 2:15-CV-5, 2016 WL 3031610, at *8 (M.D. Tenn.

May 27, 2016).

Mr. Neeley filed his motion to amend on May 16, 2016, more than one year after the

date of his alleged injuries [*See* Doc. 43-4 p. 7 (providing that Mr. Neeley's alleged injuries

occurred on or about October 18, 2014)]. Thus, unless Mr. Neeley's claims against Stapleton

relate back to the date of the original complaint, his proposed claims against Stapleton are

time barred.

Typically, under Sixth Circuit precedent, new parties may not be added after the

statute of limitations period has run. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996).

Such an amendment "establishes a new and independent cause of action which cannot be

maintained when the statute has run, for the amendment is one of substance rather than one

of form and brings into being one not presently in court." *United States ex rel. Statham

Instruments, Inc. v. W. Cas. & Surety Co.*, 359 F.2d 521, 523 (6th Cir. 1966). In certain

circumstances, however, the Sixth Circuit has stated that parties may be permitted to amend

their complaint in order to add or substitute parties, so long as the amended complaint relates

back to the original time of filing under Rule 15(c). *See, e.g.*, *Berndt*, 796 F.2d at 883

(advising the lower court of circumstances when the relation back of amendments that add

defendants could be appropriate).

19

Rule 15(c) provides:

(1) ***When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;

> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and

>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). As the situations set forth in Rule 15(c)(1)(A) and (B) do not apply here, the Court must determine whether Mr. Neeley's proposed claims against Stapleton relate back under Rule 15(c)(1)(C).

The Sixth Circuit has repeatedly held that amendments adding new parties "do not satisfy the 'mistaken identity' requirement of Rule 15(c)." *Cox*, 75 F.3d at 240; *see also Brown v. Cuyahoga Cty.*, 517 F. App'x 431, 434–35 (6th Cir. 2013). "Rule 15(c) does not permit relation back when a plaintiff learns more about a case and seeks to broaden the liability sphere to encompass new parties in addition to one already before the court." *Hiler v. Extendicare Health Network, Inc.*, No. 5:11-CV-192, 2013 WL 756352, at *6 (E.D. Ky. Feb. 26, 2013); *see also Ham v. Marshall Cty.*, No. 5:11-CV-11, 2012 WL 5930148, at *6

20

(W.D. Ky. Nov. 27, 2012) (providing that "longstanding Sixth Circuit precedent precludes Rule 15(c) from being used" where a plaintiff seeks to add a defendant while maintaining his action against another defendant); *DeBois v. Pickoff*, No. 3:09-CV-230, 2011 WL 1233665, at *12–13 (S.D. Ohio Mar. 28, 2011) ("[T]he *addition* of new defendants is not consistent with Rule 15(c)(1)(C)'s requirement of a *change* in parties.").

Here, Mr. Neeley contends that his proposed claims against Stapleton relate back because he did not know the extent to which Stapleton was involved in the events giving rise to Mr. Neeley's alleged injuries until such information was revealed in discovery. As Mr. Neeley is attempting to sue an additional defendant based on information he has learned about the case, however, the Court finds that his proposed claims against Stapleton do not relate back to the date of the filing of the original complaint. *See Hiler*, 2013 WL 756352, at *6. Mr. Neeley is already asserting claims against defendant Cook for the same injuries he asserts Stapleton caused. Sixth Circuit precedent precludes Rule 15(c) from being used in such circumstances. *See Ham*, 2012 WL 5930148, at *6.

As such, Mr. Neeley's proposed claims against Stapleton do not relate back to the date of the original complaint and are, therefore, time barred. Consequently, the Court will deny Mr. Neeley leave to amend his complaint to add claims against Stapleton.

**B.      Proposed Claims Against Grainger County for False Arrest, Malicious Prosecution, and False Imprisonment**

Mr. Neeley's proposed second amended complaint asserts new claims against Grainger County for false arrest, malicious prosecution, and false imprisonment under Tennessee state law [Doc. 43-4 pp. 2, 11, 13, 14]. Grainger County asserts that these

amendments are futile because it is entitled to immunity with respect to the proposed claims [Doc. 51 pp. 4–5].

The Tennessee Governmental Tort Liability Act ("TGTLA") provides that "all governmental entities shall be immune from suit for any injuries which may result from the activities of such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201. "Governmental entity" is defined as "any political subdivision of the state of Tennessee." *Id.* § 29-20-102(3)(A). The TGTLA removes immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." *Id.* § 29-20-205. There is an exception to this removal of immunity whereby immunity is retained where injuries arise out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, . . . or civil rights." *Id.* § 29-20-205(2). The civil-rights exception "has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution." *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010) (citation omitted). Claims arising out of the same set of circumstances as a civil-rights § 1983 claim also fall under this exception. *See id.* (finding the plaintiff's negligence claim against a city barred under the TGTLA because it arose out of the same circumstances giving rise to the plaintiff's civil-rights claim under § 1983).

The Court finds that Mr. Neeley's proposed state-law claims for false arrest, malicious prosecution, and false imprisonment against Grainger County are futile, as Grainger County retains immunity for such claims under Tenn. Code Ann. § 29-20-205(2). False arrest and malicious prosecution are specifically listed in § 29-20-205(2) as claims for

22

which a government entity retains immunity. *Id.* § 29-20-205(2). In addition, all of Mr. Neeley's proposed state-law claims against Grainger County arise out of the same set of circumstances giving rise to his § 1983 claims. As such, these claims are barred by the TGLTA and are futile. *See Johnson*, 617 F.3d at 872. Consequently, the Court will deny Mr. Neeley leave to amend his complaint to add such claims.

### C. Proposed § 1983 Claims Against Grainger County and Bean Station

Mr. Neeley's proposed amended complaint also adds claims against Grainger County and Bean Station under 18 U.S.C. § 1983 for alleged violations of his Fourth and Fourteenth Amendment rights [Doc. 43-4 p. 15]. In the proposed amended complaint, Mr. Neeley alleges that "Grainger County negligently supervised and trained Defendant Cook. City of Bean Station negligently supervised and trained Defendant Stapleton" [*Id.*].

A municipality may not be held liable under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Accordingly, to succeed on a municipal liability claim under § 1983, a plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694).

A plaintiff can demonstrate that a municipality has violated § 1983 "by proving that the municipality's training or supervision was inadequate." *Marcilis v. Twp. of Redford*, 693

F.3d 589, 605 (6th Cir. 2012). "To prevail on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Id.* (citation and internal quotation marks omitted).

Even assuming for the purposes of the motion to amend that Mr. Neeley has sufficiently alleged that Cook and Stapleton committed constitutional violations, Mr. Neeley's allegations regarding Grainger County's failure to train and supervise Cook, as well as Bean Station's failure to train and supervise Stapleton, would not withstand a motion to dismiss. Mr. Neeley's proposed amended complaint provides conclusory allegations that Grainger County and Bean Station negligently trained and supervised Cook and Stapleton, respectively. These conclusions are not supported by any factual allegations. As mere "labels and conclusions," without factual allegations to support them, do not satisfy a plaintiff's obligation to provide the grounds of his entitlement to relief, Mr. Neeley's proposed § 1983 claims against Grainger County and Bean Station would not withstand a motion to dismiss. *See Twombly*, 550 U.S. at 555. Consequently, these proposed claims are futile, and the Court will not grant Mr. Neeley leave to amend his complaint to add such claims.

### D.    Proposed Civil Conspiracy Claim Against Cook

Mr. Neeley's proposed second amended complaint also adds a conspiracy claim against Cook pursuant to 18 U.S.C. 1983 [Doc. 43-4 pp. 1, 3, 15]. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v.*

*Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). To prevail on this claim, a plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (citation omitted). "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.*

Here, the proposed amended complaint states, in a conclusory manner, that Cook and Stapleton conspired to deprive Mr. Neeley of his Fourth and Fourteenth Amendment rights by seizing and detaining him without probable cause [Doc. 43-4 p. 15]. The proposed complaint contains no factual assertions, however, to support this alleged conspiracy's existence. As such, the Court finds that Mr. Neeley's proposed civil-conspiracy claim would not survive a motion to dismiss and is, therefore, futile. *See Twombly*, 550 U.S. at 555. Consequently, the Court will not grant Mr. Neeley leave to amend his complaint to add this civil-conspiracy claim against Cook.

In sum, the Court finds that Ray Neeley's proposed amendments to the complaint are futile. Consequently, the Court will deny the motion to amend [Doc. 43] and considers the first amended complaint [Doc. 4] controlling in this action.

## IV.    Motions for Summary Judgment

Defendants Bean Station, Grainger County, and Nathan Cook all move for summary judgment as to the claims against them [Docs. 35, 38, 44]. Summary judgment under Rule

56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining

26

whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

Defendants move for summary judgment as to all claims asserted against them [Docs. 35, 38, 44]. As the Court has already determined that Jane Neeley's claims will be dismissed, the only claims remaining are Ray Neeley's. The Court will first address Mr. Neeley's claims pursuant to 42 U.S.C. § 1983 against defendant Cook. The Court will then turn to Mr. Neeley's federal disability claims against Grainger County. Finally, the Court will address the remaining state-law claims.

### A.      Section 1983 Claim Against Cook

Ray Neeley alleges a claim against Cook pursuant to 42 U.S.C. § 1983, asserting that he was seized and detained without probable cause in violation of the Fourth and Fourteenth Amendments [Add citation to complaint]. Cook moves for summary judgment on this claim, arguing that he is protected by qualified immunity.

Section 1983 authorizes anyone deprived of his federal constitutional or statutory rights by state officials to bring a civil action for damages against such officials. 42 U.S.C. § 1983; *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 485 (6th Cir. 2007). "[G]overnment officials performing discretionary functions," however, "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts

27

showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

Qualified immunity is an affirmative defense,[6] and once raised, the plaintiff bears the burden of proof to show that the official violated a right so clearly established that a "reasonable official would have understood that what he [was] doing violate[d] that right." *Id.* at 741 (internal citation and quotation marks omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005) (providing that a plaintiff bears the ultimate burden of proof as to qualified immunity). If a plaintiff fails to carry his burden as to either element of the qualified-immunity analysis, then the official is immune from suit. *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012).

Here, Mr. Neeley's § 1983 claim against Cook is premised on Cook's alleged false arrest of Mr. Neeley. To prevail on a claim for false arrest, a plaintiff must prove that the officer lacked probable cause to arrest him. *D.D. v. Sheeler*, 645 F. App'x 418, 424–25 (6th Cir. 2016). Applying the two-step qualified-immunity analysis here, Mr. Neeley must show that: (1) Officer Cook lacked probable cause to arrest him; and (2) it would have been clear to a reasonable officer that Officer Cook's conduct was unlawful. *See id.*; *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005).

To have probable cause, an officer must have "reasonable grounds for belief" that the plaintiff committed a crime, which amounts to more than "mere suspicion" but less than "prima facie proof." *D.D.*, 645 F. App'x at 424 (citing *United States v. McClain*, 444 F.3d

---

[6] Defendant Cook pleaded qualified immunity in his answer [Doc. 9 ¶ 57].

556, 562 (6th Cir. 2005)).   The probable cause needs to be for "some crime," even if different than the crime of arrest.  *Id.*; *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (providing that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause"); *Amis v. Twardesky*, 637 F. App'x 859, 861 (6th Cir. 2015) (upholding the district court's grant of qualified immunity for the plaintiff's false arrest claim because the officers had probable cause to arrest plaintiff for two of the three crimes with which she was charged).   State law defines the offense, while federal law determines whether there was probable cause for an arrest with respect to that offense.  *D.D.*, 645 F. App'x at 424 (citing *Kennedy v. City of Villa Hills*, 635 F.3d 210, 215 (6th Cir. 2011)).

In determining whether the arresting officer had probable cause, the Court must look to the totality of the circumstances and determine whether a reasonably prudent person would believe that the arrestee had committed a crime.  *Id.* (citing *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010)).   The Court should make this determination while looking to what the officer knew at the moment of arrest and grant qualified immunity if an officer could have reasonably believed that the arrest was lawful.  *Amis*, 637 F. App'x at 861 (citing *Kennedy*, 635 F.3d at 214).   The Court, however, must still view the facts in the light most favorable to the non-moving party.  *See D.D.*, 645 F. App'x at 424–25 (discussing the probable cause standard in a false arrest claim and viewing the facts in the light most favorable to the plaintiffs, the non-movants, in doing so).

In this case, Cook arrested Mr. Neeley for domestic assault pursuant to Tenn. Code Ann. § 39-13-103, and Cook asserts that he had probable cause to make that arrest.   In

29

addition to domestic assault, Cook contends that a reasonable officer could have determined that probable cause existed to arrest Mr. Neeley for knowing abuse, neglect, or exploitation ("KANE"), pursuant to Tenn. Code Ann. § 71-6-117, and for reckless endangerment, pursuant to Tenn. Code Ann. § 39-13-103. Mr. Neeley does not dispute that as long as probable cause existed to arrest him for "some crime," even if different than the crime of arrest, he cannot show that a constitutional violation occurred [*See* Doc. 55 pp. 13–17]. *See D.D.*, 645 F. App'x at 424. As such, the Court will analyze whether probable cause existed to arrest Mr. Neeley for: (1) domestic assault; (2) KANE; and/or (3) reckless endangerment.

The Tennessee domestic assault statute provides that a person commits domestic assault if the person commits assault against a "domestic abuse victim." Tenn. Code Ann. § 39-13-111(b). A "domestic abuse victim" includes individuals who are related by blood. *Id.* § 39-13-111(b)(4). Under Tennessee law, a person commits assault when "(1) [i]ntentionally, knowingly or recklessly caus[ing] bodily injury to another; (2) [i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury; or (3) [i]ntentionally or knowingly caus[ing] physical contact with another" in such a way that a reasonable person would find it "extremely offensive or provocative." *Id.* § 39-13-101.

As to KANE, under Tennessee law, "[i]t is an offense for any person to knowingly, other than by accidental means, abuse, neglect, or exploit any adult." *Id.* § 71-6-117(a). "[A]buse or neglect" is defined as:

> the infliction of physical pain, injury, or mental anguish, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult or a situation in which an adult is unable to provide or obtain the services that are necessary to maintain the person's health or welfare.

30

*Id.* § 71-6-102(1)(A). The statute further defines "adult" as: "a person eighteen (18) years of age or older who because of a mental or physical dysfunctioning or advanced age is unable to manage such person's own resources, carry out the activities of daily living, or protect such person from neglect, hazardous or abusive situations without assistance from others." *Id.* § 71-6-102(2). A "caretaker" is defined to include a spouse that resides with the "adult" who knows of the adult's medical condition or advanced age and knows that the adult is unable to provide for his or her own care. *Id.* § 71-6-102(5).

Finally, as to reckless endangerment, a person commits reckless endangerment under Tennessee law by "recklessly engag[ing] in conduct which places or may place another person in imminent danger of death or serious bodily injury." *Id.* § 39–13–103(a).

In analyzing whether Cook had probable cause to arrest Mr. Neeley for domestic assault, the Court notes that "where law enforcement authorities are collaborating in an investigation . . . the knowledge of one is presumed shared by all." *Illinois v. Andreas*, 463 U.S. 765, 772 n. 5 (1982). Here, based on the statements by Mr. Neeley that Mrs. Neeley believed he was "pissed off," that he "can't deal with her no more," that he had "grabbed" and "jerked" Mrs. Neeley, and based on the fact that Mr. Neeley left Mrs. Neeley on the floor for over an hour despite Mrs. Neeley's requests for help because he would not "arg[ue] with her no more," there was ample evidence available upon which a reasonable officer could determine that the couple had been fighting [Doc. 35-1, 911 Recording; Doc. 35-6, Stapleton Video]. Although Mrs. Neeley stated that Mr. Neeley did not harm her that morning, she provided that he had in the past and that Mr. Neeley had stated on multiple occasions that he would kill anybody who caused him to go to jail [Doc. 35-3 pp. 8–9; Doc.

31

35-6, Stapleton Video]. Officer Cook also observed bruising and a small cut on Mrs. Neeley's arm [Doc. 35-3 pp. 2–3]. Although there may have been another explanation for this bruising, that possibility does not negate a finding of probable cause. Furthermore, Officer Cook was aware that three separate people told Mr. Neeley to call 911 before he did so [*Id.* at 6–7].

Upon review of the totality of the circumstances, the Court finds that Officer Cook had "reasonable grounds for belie[ving]" that Mr. Neeley committed domestic assault. *See D.D.*, 645 F. App'x at 424. Based on the facts available, a reasonable officer could determine probable cause existed that Mr. Neeley violated Tennessee's domestic assault statute by "knowingly caus[ing]" his wife, Mrs. Neeley, to "reasonably fear imminent bodily injury." *See* Tenn. Code Ann. §§ 39-13-101, 39-13-111.

As to KANE and reckless endangerment, Mr. Neeley asserts "[t]here is not a scintilla of proof" that he committed those crimes, but he provides no further analysis to support those conclusions [Doc. 55 p. 16].

Looking at KANE, the record shows that Mrs. Neeley was a seventy-one-year-old woman who had medical issues and had just gotten out of the hospital [Doc. 35-1, 911 Recording; Doc. 35-6, Stapleton Video]. Despite this, Mr. Neeley left her on the floor after she fell for over an hour and did not call 911 until after three people told him to do so [Doc. 35-1, 911 Recording; Doc. 35-3 pp. 6–7; Doc. 35-6, Stapleton Video]. The record also contains evidence that Mrs. Neeley needed assistance because she could not walk [Doc. 35-1, 911 Recording]. Based on these circumstances, a reasonable officer could find probable cause that Mr. Neeley "abuse[d], or neglect[ed]" his wife, who was "unable to . . . carry out

32

the activities of daily living . . . without assistance from others," by "depriv[ing] [her] of services" as her caretaker.  *See* Tenn. Code Ann. §§ 71-6-102(1)(A), 71-6-102(2), 71-6-102(5), 71-6-117(a).  As such, the Court finds that probable cause existed to arrest Mr. Neeley for KANE.

Similarly, the Court also finds that probable cause existed to arrest Mr. Neeley for reckless endangerment, as there were reasonable grounds for believing that Mr. Neeley "recklessly engage[d] in conduct which place[d] . . . [Mrs. Neeley] in imminent danger of death or serious bodily injury."  *See id.* § 39–13–103(a).  By leaving his wife, who was recently discharged from the hospital, on the ground for an hour despite her requests for help, and despite several individuals telling him to call 911, a reasonable officer could find probable cause that Mr. Neeley committed reckless endangerment.

Additionally, the Court notes that Mr. Neeley's failure to adequately respond to arguments pertaining to whether probable cause existed to arrest him for KANE or reckless endangerment supports a finding that Mr. Neeley has not met his burden under the qualified immunity analysis.  *See Garretson*, 407 F.3d at 798.  In sum, even viewing the facts in the light most favorable to Mr. Neeley, the Court finds that a reasonable officer could conclude that probable cause existed to arrest Mr. Neeley for domestic assault, KANE, and reckless endangerment.  As such, Mr. Neeley has not satisfied the first prong of the qualified-immunity analysis, that is, showing that Officer Cook committed a constitutional violation.

The Court also notes that, aside from the conclusory statement that "the Fourth Amendment right to be free from unreasonable seizure by the government was clearly established on October 18, 2014," Mr. Neeley does not analyze whether Officer Cook

33

violated a right so clearly established that a "reasonable official would have understood that what he [was] doing violate[d] that right." *al-Kidd*, 563 U.S. at 741.

Although Mr. Neeley is correct that it is "clearly established that arrests without probable cause violate[] the Constitution," the key question here is whether Officer Cook's "actions were objectively unreasonable in light" of Mr. Neeley's Fourth Amendment rights. *Parsons v. City of Pontiac*, 533 F.3d 492, 503–04 (6th Cir. 2008). The doctrine of qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). Mr. Neeley has not provided any law or argument to support a finding that it would have been clear to a reasonable officer that Cook's actions were unlawful. As such, Mr. Neeley has not met his burden as to the second prong of the qualified-immunity analysis.

In sum, the Court finds that Officer Cook had probable cause to arrest Mr. Neeley for a crime, and—even if he did not have such probable cause—Mr. Neeley has not shown that Cook violated a clearly-established right. As such, Cook is entitled to summary judgment as to Mr. Neeley's § 1983 claim because Cook is protected by qualified immunity.

## B.    Federal Disability Claims Against Grainger County

In the amended complaint, Ray Neeley asserts disability discrimination claims against Grainger County pursuant to the ADA and the Rehabilitation Act of 1973.[7] Grainger County moves for summary judgment as to these claims, and Mr. Neeley did not respond to this portion of Grainger County's motion [Doc. 39 pp. 16–18; *see* Doc. 55]. Mr. Neeley generally asserts in the complaint that he "told Grainger County Jail officials he was

---

[7]    Mr. Neeley also asserts a disability discrimination claim against Grainger County pursuant to the Tennessee Human Rights Act.

34

permanently disabled and he asked them for reasonable accommodations and stated to them what reasonable accommodations his disability required" [Doc. 4 p. 9]. He further alleges that he was denied such accommodations [*Id.*].

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides that a qualified individual with a disability shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

In order to prevail on a claim under these statutes, a plaintiff "must establish a prima facie case of discrimination." *Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016). A plaintiff must show that he: "(1) is disabled under the statutes, (2) is 'otherwise qualified' for participation in the program, and (3) 'is being excluded from participation in, denied the benefits of, or subjected to discrimination' because of his disability or handicap, and (4) (for the Rehabilitation Act) that the program receives federal financial assistance." *Id.* (citation omitted).

Mr. Neeley has not cited to any evidence in the record indicating that any jailer knew that he had a disability. Although Mr. Neeley provides that he asked a jailer for a pillow and mat, he did not tell the jailer why he needed those items [Doc. 35-2 pp. 27–28, 31–32]. Consequently, Mr. Neeley cannot make his prima facie case because he has provided no

35

evidence that he was subjected to discrimination because of his disability or handicap. As such, the Court finds that Grainger County is entitled to summary judgment as to Mr. Neeley's disability discrimination claims pursuant to the ADA and the Rehabilitation Act.

### C. Remaining State-Law Claims

In addition to the claims the Court has already analyzed, Mr. Neeley asserts the following state-law claims in the amended complaint: (1) negligence against Grainger County and Bean Station; (2) negligent infliction of emotional distress claims against all defendants; (3) disability discrimination against Grainger County; (4) false arrest against Cook; (5) malicious prosecution against Cook; (6) intentional infliction of emotional distress against Cook; and (6) false imprisonment against Cook [Doc. 4].

While the Court has broad discretion under 28 U.S.C. § 1367(c)(3) to dismiss or to retain jurisdiction over pendent state-law claims under the circumstances presented by this case, "the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment." *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001); *see, e.g.*, *Jackson v. Town of Caryville*, Nos. 3:10-CV-153, 3:10-CV-240, 2011 WL 5143057, at *10 (E.D. Tenn. Oct. 28, 2011). Having found that Mr. Neeley's federal claims should be dismissed on defendants' motions for summary judgment, the Court will decline to exercise continuing "pendent" or supplemental jurisdiction over Mr. Neeley's state-law claims. 28 U.S.C. § 1367(c); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725–26 (1966); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996) ("When all federal claims are

dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.").

As such, the Court will deny in part as moot Nathan Cook and Grainger County's motions for summary judgment [Docs. 35, 38] to the extent that the Court will not exercise supplemental jurisdiction over the state-law claims and, therefore, will not address whether Cook and Grainger County are entitled to summary judgment as to those claims. Similarly, the Court will deny as moot Bean Station's Motion for Summary Judgment [Doc. 44], as it only concerns state-law claims. The Court will also deny as moot Ray Neeley's Motion for Extension of Time Within Which to File a Certificate of Good Faith or Excuse Compliance for Extraordinary Cause [Doc. 56], as it only pertains to state-law claims.

## V.      Conclusion

For the reasons discussed herein, the Court will: (1) **GRANT** Bean Station's Motion to Dismiss Claims Brought by Jane Neeley [Doc. 16]; (2) **DENY** Ray Neeley's Motion to Substitute Party [Doc. 20]; (3) **DENY as moot** Bean Station's Motion to Strike Plaintiffs' Motion to Substitute Party [Doc. 22]; (4) **GRANT** Grainger County and Nathan Cook's Motion to Dismiss the Claims of Jane Neeley [Doc. 24]; (5) **DENY** Ray Neeley's Motion for Extension of Time Under Federal Rules of Civil Procedure 6(b) [Doc. 27]; (6) **GRANT in part** and **DENY in part as moot** Nathan Cook's Motion for Summary Judgment [Doc. 35]; (7) **GRANT in part** and **DENY in part as moot** Grainger County's Motion for Summary Judgment [Doc. 38]; (8) **DENY** Ray Neeley's Motion to Amend Pleading [Doc. 43]; (9) **DENY as moot** Bean Station's Motion for Summary Judgment [Doc. 44]; and (10) **DENY**

**as moot** Ray Neeley's Motion for Extension of Time Within Which to File a Certificate of Good Faith or Excuse Compliance for Extraordinary Cause [Doc. 56].

The following claims will be **DISMISSED with prejudice**: (1) all claims asserted by plaintiff Jane Neeley; (2) plaintiff Ray Neeley's 42 U.S.C. § 1983 claims against defendant Cook; and (3) plaintiff Ray Neeley's disability discrimination claims pursuant to the ADA and the Rehabilitation Act. The Court declines to exercise supplemental jurisdiction over Ray Neeley's remaining state-law claims. There being no other issues in this case, the Court will **DIRECT** the Clerk of Court to **CLOSE** this case.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

38